IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,** | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) CASE NO.: |
| **ARCH INSURANCE COMPANY,** | )<br>)<br>) |
| Defendant. | ) |

_____

## COMPLAINT
_____

COMES NOW the Plaintiff, American Guarantee and Liability Insurance Company ("AGLIC"), and for its complaint against Defendant Arch Insurance Company ("Arch"), states the following:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff AGLIC is a corporation formed under the laws of the State of New York and with its principal place of business in Schaumburg, Illinois.

2. Defendant Arch is a foreign corporation formed under the laws of the State of Missouri and with its principal place of business in Kansas City, Missouri.

3. This Court has jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000.00.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to AGLIC's claims occurred in this District, including the delivery and issuance of subject insurance policies.

## STATEMENT OF THE FACTS

5. Megan Bruner worked at an office space inside the RSA Battle House Tower (the "RSA Tower") in Mobile, Alabama.

6. Ms. Bruner utilized a parking space in a parking deck located at 51 North Water Street in Mobile, Alabama.

7. Ms. Bruner claims that, on June 5, 2018, inside the parking deck, she was sexually assaulted by a homeless individual.

8. Dynamic Security, Inc. ("Dynamic Security") was the company responsible for security at the parking deck.

9. Dynamic Security provided security services covering the parking deck pursuant to an Agreement for Security Guard Services at the Retirement Systems of Alabama, dated November 3, 2014, and amended October 8, 2015 and April 15, 2016. The Dynamic Agreement was renewed on October 2, 2017, extending the

contract period through November 30, 2018 (collectively "the Dynamic Agreement"). (Exhibit "A" to be filed under seal).

10. The Dynamic Agreement includes the following Insurance provision, setting out Dynamic Security's insurance responsibilities at the parking deck:

> **INSURANCE**
>
> The Contractor shall secure, pay for, and at all times during the performance of this Agreement, maintain through companies or agencies acceptable to the Retirement Systems of Alabama, such public, contingent and employer's liability insurance, containing provisions satisfactory to the Retirement Systems of Alabama, as will protect the contractor and the Retirement Systems of Alabama from claims under workers' compensation and other employee benefit acts, and from any and all claims for property damage or loss thereof, which may arise in or resulting from the performance of the services under this Agreement, or by the failure or omission of the Contractor to comply with any of the provisions of the Agreement. Such insurance shall name Retirement Systems of Alabama as additional insured and shall include comprehensive general liability and property damage, including automobile, products-completed operations and blanket broad form contractual, with coverage adequate in amounts to be determined by the Contractor to be reasonable necessary to afford protection from such claims but with minimum limits as to both bodily injury and property damage of not less than **$15,000,000.00** general liability alone, or together with an excess liability umbrella. No provision or provisions of the Agreement shall limit or restrict any liabilities assumed by the Contractor and stated on this Agreement. The Contractor shall, prior to commencing any services, submit to Retirement Systems of Alabama a certificate(s) of insurance indicating such insurance to be in force and effect. No insurance required by this Agreement shall be canceled without thirty (30) calendar days prior written notice to Retirement Systems of Alabama.

11. The Dynamic Agreement includes the following Indemnification provision, setting out Dynamic Security's indemnification responsibilities at the parking deck:

**INDEMNIFICATION**

To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless Retirement Systems of Alabama, its administrators, officers, employees and agents, from and against all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the services under this Agreement or lack thereof. Such obligation shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity, which would otherwise exist as to any party or person described in this text. The Contractor shall save harmless Retirement Systems of Alabama, its administrators, officers, employees and agents, from and indemnify it and them against all claims, liens, and suits for labor and material furnished by the Contractor. The Contractor shall defend on behalf of Retirement Systems of Alabama, its administrators, officers, employees and agents, and suits jointly against the Contractor and Retirement Systems of Alabama against Retirement Systems of Alabama alone, or against any administrator, officer, employee or agent of Retirement Systems of Alabama, for or arising out of any or all of the aforesaid causes. All claims against the State of Alabama or Retirement Systems of Alabama, or any of its administrators, officers, employees or agents by any employee of the Contractor, any subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, the indemnification obligation under this paragraph shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Contractor, or any subcontractor under worker's compensation acts, disability benefits acts or other employee benefit acts.

12. On January 4, 2019, Ms. Bruner filed a Complaint in the Circuit Court of Mobile County, Alabama, against the RSA Defendants. (Exhibit "B") (The "Bruner Lawsuit").

13. On July 1, 2019, Ms. Bruner filed an Amended Complaint in the Bruner Lawsuit to add Dynamic Security as a defendant. (Exhibit "C").

14. On November 15, 2019, Ms. Bruner filed a Second Amended Complaint in the Bruner Lawsuit against the RSA Defendants and Dynamic Security. (Exhibit "D").

15. In her Second Amended Complaint, Ms. Bruner alleges that before her June 5, 2018 assault, Dynamic Security "knew, had reason to know from past experience, and were on notice that [her attacker] was a sexual predator, that [he] had a history of sexual violence, that [he] used the parking deck as a shelter, that [he] was likely to be in and around the parking deck, and that [his] presence in and around the parking deck would endanger those using the parking deck, including [Ms. Bruner]." (Exhibit "D", ¶ 13). Ms. Bruner contends that Dynamic Security created an unreasonably dangerous condition and failed to take measures to protect her. *Id.* at ¶¶ 16-21. These allegations form the basis of Ms. Bruner's claims that Dynamic Security "negligently" and "wantonly" "failed to provide adequate security in the parking deck." *Id.* at ¶¶ 25, 28. Ms. Bruner further alleges that Dynamic Security "willfully violated the terms and conditions of the [Dynamic Agreement] by engaging in fraudulent billing practices," which resulted in an "increased danger to [Ms. Bruner]." *Id.* at ¶¶ 22, 23.

16. AGLIC issued a commercial insurance policy, which includes a commercial general liability part, bearing Policy Number CPO 0265144-01, for

policy period of May 15, 2018 to May 15, 2019 ("the AGLIC Policy"), to named insured Alabama Real Estate Holdings ("RSA"). (Exhibit "E").

17. The AGLIC Policy also identified PCH Hotels and Resorts, Inc. ("PCH") as a named insured on the Schedule of Name Insureds.

18. Larry Armstead and Allison Rogers also qualified as insureds under the AGLIC Policy.

19. The AGLIC Policy, CGL coverage part, provides a $1 million per occurrence limit.

20. AGLIC provided a defense to the RSA Defendants in the Bruner Lawsuit.

21. Arch issued a commercial general liability policy to Dynamic Security as its named insured, bearing policy number BSPKG0284802, for the April 16, 2018 to April 16, 2019 policy period ("the Arch Policy"). (Exhibit "F"). RSA is listed as a Certificate Holder on the Arch Policy.

22. The Arch Policy, CGL coverage part, provides a $1 million per occurrence limit.

23. The Arch Policy contains a Blanket Additional Insured Endorsement which states as follows:

---

**BLANKET ADDITIONAL INSURED ENDORSEMENT**

This endorsement modifies insurance provided under the following:

Section II, WHO IS AN INSURED, is amended by adding

Any person, organization, trustee or estate:

    a. to whom "you" are obligated by written contract to provide insurance such as that afforded by this policy, or

    b. specifically designated as an additional insured on an authorized Certificate of Insurance received by "us" prior to any "occurrence";

    Coverage afforded under (a) or (b) is limited to liability arising out of "your work" for such additional insured(s) and is caused by the negligent acts of the named insured.

This endorsement shall be excess of any other insurance available except coverage afforded by this endorsement will be primary and non-contributory, but only if and to the extent required by written contract.

All other terms and conditions of the Policy remain the same.

---

24. The RSA Defendants qualify as additional insureds under the Arch Policy.

25. Ms. Bruner's claims against the RSA Defendants in the Bruner Lawsuit arose out of Dynamic Security's work for the RSA Defendants and were caused by the negligent acts of Dynamic Security.

26. Arch Policy and the AGLIC Policy have similar "Other Insurance" provisions. The Arch Policy contains the following "Other Insurance" provision within Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS:

**ARCH POLICY OTHER INSURANCE PROVISIONS**

**4.    Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A, B or D of this Coverage Part, our obligations are limited as follows[1]:

---

[1] As amended by Form AIC-SGP-E24 (8/02)

     **a.**     **Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

…

     **c.**     **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurers share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

The AGLIC Policy contains the following endorsed "Other Insurance" provision in Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS of the policy:

**AGLIC POLICY OTHER INSURANCE PROVISIONS**

**4.**     **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

     **a.**     **Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

     **b.**     **Excess Insurance**

        **(1)** This insurance is excess over:

...

    (b)    Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

    **c.**    **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

27. On February 19, 2019, AGLIC, on behalf of the RSA Defendants, made a demand on Arch to provide defense and indemnity to the RSA Defendants as additional insureds under the Arch Policy for the claims in the Bruner Lawsuit.

28. On March 27, 2019, Arch denied defense and indemnity coverage to the RSA Defendants.

29. AGLIC renewed its tender for defense and indemnity to Arch throughout the Bruner Lawsuit.

30. AGLIC also kept Arch informed of its settlement negotiations, including mediation(s), with Ms. Bruner in the Bruner Lawsuit.

31. Arch continued to decline defense and indemnity to the RSA Defendants under the Arch Policy for the Bruner Lawsuit.

32. To protect the interests of the RSA Defendants, on June 6, 2023, AGLIC entered into a confidential settlement agreement with Ms. Bruner, obtaining a dismissal with prejudice of the claims against the RSA Defendants.

33. Arch should have paid the settlement for the RSA Defendants in the Bruner Lawsuit under the Arch Policy, but it refused to do so, causing AGLIC to have to pay the settlement under the AGLIC Policy.

34. The AGLIC Policy also contains the following provision in Section IV – COMMERCIAL GENERAL LIABILITY CONDITIONS which gives AGLIC the ability to step in to the shoes of the insured RSA. The provision states the following:

> **8.   Transfer of Rights of Recovery Against Others to Us**
>
> a. If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. [2]
>
> …

---

[2] As amended by Form U-GL-1504-B CW (04/13).

## COUNT I:

## DECLARATORY JUDGEMENT: ARCH OWED A DUTY TO DEFEND THE RSA DEFENDANTS AS ADDITIONAL INSUREDS

35. AGLIC incorporates Paragraphs 1 through 34 as if set forth fully herein.

36. The RSA Defendants qualify as additional insureds under the Arch Policy.

37. The coverage that Arch owed to the RSA Defendants under Arch Policy for the Bruner Lawsuit was primary and non-contributory. The Dynamic Agreement required Dynamic Security to not only add the RSA Defendants as additional insureds but also mandated that the "coverage [be] adequate in amounts … to be reasonabl[y] necessary to afford protection from [ ] claims but with minimum limits as to both bodily injury and property damage of not less than $15,000,000.00 …." Construing the Dynamic Agreement and Arch Policy as a whole, the coverage Arch owed to the RSA Defendants under Arch Policy for the Bruner Lawsuit must be found to be primary and non-contributory.

38. Arch owed the RSA Defendants, as additional insureds, a duty to defend under the Arch Policy for the claims in the Bruner Lawsuit.

39. Arch failed to honor its obligations under the Arch Policy.

40. As a result, AGLIC incurred defense costs in defending the RSA Defendants in the Bruner Lawsuit to protect the RSA Defendants' interests because Arch refused to do so.

41. WHEREFORE, AGLIC seeks a declaration from this Court that

   (a) The RSA defendants qualify as additional insureds under Arch policy;

   (b) The coverage under the Arch policy for the RSA defendants is primary and non-contributory; and

   (c) Arch owed defense to the RSA Defendants for the Bruner Lawsuit.

## COUNT II:

**DECLARATORY JUDGEMENT: ARCH OWED A DUTY TO INDEMNIFY THE RSA DEFENDANTS AS ADDITIONAL INSUREDS**

42. AGLIC incorporates Paragraphs 1 through 34 as if set forth fully herein.

43. The RSA Defendants qualify as additional insureds under the Arch Policy.

44. The coverage that Arch owed to the RSA Defendants under Arch Policy for the Bruner Lawsuit was primary and non-contributory. The Dynamic Agreement required Dynamic Security to not only add the RSA Defendants as additional insureds but also mandated that the "coverage [be] adequate in amounts … to be reasonabl[y] necessary to afford protection from [ ] claims but with minimum limits

12

as to both bodily injury and property damage of not less that $15,000,000.00 ….." Construing the Dynamic Agreement and Arch Policy as a whole, the coverage Arch owed to the RSA Defendants under Arch Policy for the Bruner Lawsuit must be found to be primary and non-contributory.

45. Arch owed the RSA Defendants, as additional insureds, a duty to indemnify under the Arch Policy for the claims in the Bruner Lawsuit.

46. Arch failed to honor its obligations under the Arch Policy.

47. As a result, AGLIC had to pay the settlement for the RSA Defendants in the Bruner Lawsuit to protect the RSA Defendants' interests because Arch refused to do so.

48. WHEREFORE, AGLIC seeks a declaration from this Court that

(a) The RSA defendants qualify as additional insureds under Arch policy;

(b) The coverage under the Arch policy for the RSA defendants is primary and non-contributory; and

(c) Arch owed indemnity to the RSA Defendants for the Bruner Lawsuit.

## COUNT III:

## EQUITABLE CONTRIBUTION

49. AGLIC incorporates Paragraphs 1 through 34 as if set forth fully herein.

13

50. The AGLIC Policy provided primary coverage for the claims asserted against the RSA Defendants in the Bruner Litigation.

51. The Arch Policy also provided primary coverage for the claims asserted against the RSA Defendants, as additional insureds, in the Bruner Litigation.

52. AGLIC and Arch insured the same interest, subject matter, and risk regarding the RSA Defendants in the Bruner Lawsuit.

53. The "Other Insurance" provisions in the AGLIC and Arch policies are mutually repugnant.

54. The AGLIC Policy and Arch Policy provide for contribution in equal shares. The polices both have a $1,000,000 each occurrence limit.

55. WHEREFORE, AGLIC requests the following relief:

(a) Under equitable contribution principles, AGLIC is entitled to reimbursement from Arch for a *pro rata* share of the defense costs it incurred in defending the RSA Defendants in the Bruner Lawsuit;

(b) Under equitable contribution principles, AGLIC is entitled to reimbursement from Arch for a *pro rata* share of the amounts AGLIC paid in settlement of the Bruner Lawsuit to protect the RSA Defendants; and

(c) AGLIC is entitled to such other, further, and different relief as the Court deems just and proper.

## COUNT IV:

## EQUITABLE/CONTRACTUAL SUBROGATION

56. AGLIC incorporates Paragraphs 1 through 34 as if set forth fully herein.

57. Pursuant to the terms of the AGLIC Policy, referenced in paragraph 34, AGLIC is contractually subrogated to the claims, rights, and demands of the RSA Defendants in the Bruner Lawsuit.

58. AGLIC, as the RSA Defendants' subrogee, now stands in the RSA Defendants' shoes and has standing to initiate legal action against Arch in this proceeding.

59. The payment made by AGLIC to settle the Bruner Lawsuit was not voluntary in that it was required for the protection of the RSA Defendants under the AGLIC Policy and the Arch Policy.

60. AGLIC made a full and complete payment solely because Arch failed to meet its direct and contractual obligations to the RSA Defendants under both the Dynamic Agreement and the Arch Policy to pay the settlement reached in the Bruner Lawsuit.

61. Alternatively, AGLIC enjoys subrogee rights as a matter of equity.

62. WHEREFORE, AGLIC seeks the following relief:

(a) Under equitable and or contractual subrogation principles, AGLIC is entitled to full reimbursement from Arch for all costs associated in defending the RSA Defendants in the Bruner Lawsuit;

(b) Under equitable and or contractual subrogation principles, AGLIC is entitled to full reimbursement from Arch for defense costs as well as the amounts AGLIC paid in settlement of the Bruner Lawsuit to protect the RSA Defendants; and

(c) AGLIC is entitled to such other, further, and different relief as the Court deems just and proper.

Respectfully submitted,

s/Joel S. Isenberg
Joel S. Isenberg (ASB-8855-N76J)
William W. Bramlett (ASB-1273-E68B)
Counsel for Plaintiff American Guarantee and Liability Insurance Company

**OF COUNSEL:**
PORTERFIELD, HARPER, MILLS
MOTLOW & IRELAND, PA
22 Inverness Center Parkway, Suite 600
Birmingham, AL 35242
(205) 980-5000 / (205) 980-5001 Fax
jsi@phm-law.com
wwb@phm-law.com